UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
MILK WAGON DRIVERS & DAIRY
EMPLOYEES,

        Plaintiffs,                  MEMORANDUM AND ORDER

     - against -                    13 CV 5083 (ILG) (VVP)

ELMHURST DAIRY, INC., et al.,

        Defendants.
-------------------------------------------------------x
GLASSER, United States District Judge:

       Plaintiffs, a group of former employees of Elmhurst Dairy, Inc. ("Elmhurst"), bring this action against Elmhurst and Milk Wagon Drivers and Dairy Employees, Local 584, International Brotherhood of Teamsters, the union representing certain employees of Elmhurst (the "Union," and together with Elmhurst, "Defendants"), seeking to vacate the award issued in an arbitration between Elmhurst and the Union. Specifically, plaintiffs assert that Elmhurst violated its collective bargaining agreement with the Union, that the Union failed to fairly represent plaintiffs at the arbitration, and that Defendants colluded to mislead the arbitrator and manipulate the arbitration process. Currently before the court are motions from each of the Defendants to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, both of the motions are GRANTED.

## BACKGROUND

I.    Facts & Procedural History

       Except where otherwise noted, the following facts are taken from Plaintiffs' verified petition, Dkt. No. 1. Ex. A (the "Petition"), and other documents the Court may consider, and are accepted as true for purposes of deciding this motion. Plaintiffs are 42

1

former senior employees of Elmhurst and members of the Union. Petition ¶¶ 1–2.[1] Plaintiffs were laid off by Elmhurst on September 16, 2012. Petition ¶ 11; Award and Opinion of Arbitrator Jeffrey B. Tener, dated May 28, 2013 [Dkt. No. 16-2] (the "Arbitrator's Decision") at 7. The Union challenged the layoffs in arbitration for violating the seniority provisions of the collective bargaining agreement between Elmhurst and the Union (the "CBA"). Arbitrator's Decision at 1. The arbitration resulted in a decision in favor of Elmhurst. Id. at 18.

At the heart of the Petition is Plaintiffs' allegation that Elmhurst and the Union worked together to undermine the arbitration process and render it a "charade." Petition ¶ 8. Because of this collusion, the Arbitrator's Decision "was based on wrong, inaccurate and incomplete information." Id. ¶ 29. The arbitrator accordingly failed to consider a number of relevant factors and so decided the matter incorrectly. Id. ¶¶ 15–17, 26–29. In support of these allegations, Plaintiffs catalog a number of "blatant inaccuracies" in the Arbitrator's Decision. Id. ¶ 13.

In addition to its conduct during the arbitration, Plaintiffs refer to a number of other instances when the Union breached its duty to fairly represent Plaintiffs, including misappropriating a clothing allowance, id. ¶ 13(i), and secretly agreeing to increase the length of the probationary period for Elmhurst employees, id. ¶ 13(o). And beyond the layoffs, Plaintiffs list additional instances of Elmhurst breaching the CBA, including leasing work to non-union subsidiaries. Id. ¶ 7.

Plaintiffs initiated this action by filing the Petition in the Supreme Court of the State of New York, County of Queens on September 3, 2013. See Dkt. No. 1. Defendants

---

[1] As discussed below, the number and identity of the Plaintiffs was not made clear in the Petition and only addressed for the first time in Plaintiffs' Oppositions. Indeed, the Petition in general contains few details about the factual background of Plaintiffs' claims—the layoffs and subsequent arbitration.

2

filed a joint notice of removal in this court on September 12, 2013. Id. On October 11, 2013, Plaintiffs moved to remand the case to New York state court pursuant to 28 U.S.C. § 1447, Dkt. No. 14, which motion was denied by Memorandum and Order dated December 26, 2013, Dkt. No. 25. Elmhurst and the Union filed motions to dismiss the Petition on September 26, 2013 and October 15, 2013, respectively. Dkt. Nos. 10 ("Elmhurst Mem."); 17 ("Union Mem."). Plaintiffs filed oppositions to each motion on March 13, 2014. Dkt. Nos. 29 ("Pls.' Elmhurst Opp'n"); 31 ("Pls.' Union Opp'n"). Defendants filed their replies on March 27, 2014, Dkt. No. 34 ("Union Reply"), and March 31, 2014 ("Elmhurst Reply").

II.     Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." To survive a motion to dismiss, the plaintiff's pleading must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Although detailed factual allegations are not necessary, the pleading must include more than an "unadorned, the-defendant-unlawfully-harmed-me accusation;" mere legal conclusions, "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement" by the plaintiff will not suffice. Id. (internal quotations and citations omitted). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

3

has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Thus, on a motion to dismiss for failure to state a claim, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." York v. Ass'n of the Bar of City of N.Y., 286 F.3d 122, 125 (2d Cir. 2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Serdarevic v. Centex Homes, LLC, 760 F. Supp. 2d 322, 328 (S.D.N.Y. 2010) (quoting Leonard F. v. Israel Disc. Bank of N.Y., 199 F.3d 99, 107 (2d Cir. 1999)). The Court will accordingly consider the Arbitrator's Decision, which is referred to extensively in the Petition, and of which the Court may take judicial notice. See Henneberger v. Cnty. of Nassau, 465 F. Supp. 2d 176, 185 (E.D.N.Y. 2006) (collecting cases).

## DISCUSSION

I. Plaintiffs' Motion to Amend

Rule 10(a) of the Federal Rules of Civil "expressly requires that civil actions be brought in the true name of the plaintiffs." Doe v. Del Rio, 241 F.R.D. 154, 156 (S.D.N.Y. 2006); see also Fed R. Civ. P. 10(a) ("The title of the complaint must name all the

parties."). The Petition, which identifies the Plaintiffs only as "Milk Wagon Drivers and Dairy Employees," fails to comply with Rule 10(a).

In their Oppositions, Plaintiffs for the first time identify themselves as the 42 Elmhurst employees who were laid off on September 16, 2012.[2] Pls.' Elmhurst Opp'n at 11; Pls.' Union Opp'n at 5. Plaintiffs explain that they did not list their individual names in the Petition "for the sake of brevity" and seek leave to amend the Petition to comply with Rule 10(a). Pls.' Elmhurst Opp'n at 11–12; Pls.' Union Opp'n at 5–6. As explained more fully below, the Petition ultimately fails to state claims that are facially plausible. Because the additional information would not cure the Petition, leave to amend is denied as futile. Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany, 615 F.3d 97, 114 (2d Cir. 2010).

## II. Plaintiffs' Petition to Vacate the Arbitration Award

The first count of the Petition seeks vacatur of the arbitration award in favor of Elmhurst. Petition at 13. The Union does not contest Plaintiffs' allegation that the arbitrator committed reversible error.[3] Elmhurst opposes vacatur, arguing that the petition to vacate is untimely and that it fails to allege sufficient grounds to justify vacating the award.

### a. Timeliness

Because Section 301 of the LMRA does not contain a statute of limitations, federal courts must borrow the appropriate state statute of limitations. Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel, 145 F.3d 85, 88 (2d Cir.

---

[2] The Arbitrator's Decision states that only 39 employees were ultimately laid off. Arbitrator's Decision at 1, 7.
[3] The Court notes, however, that the Union did not oppose Elmhurst's action to confirm the award. See Elmhurst Dairy, Inc. v. Milk Wagon Drivers & Dairy Emps., Local 584, Int'l Bhd. of Teamsters, No. 13-cv-5001 (ILG)(VVP) [Dkt. No. 10].

5

1998).  The appropriate limitations period for motions to vacate arbitration awards is the ninety-day statute of limitations contained in New York Civil Practice Law and Rules ("CPLR") § 7511(a), which runs from delivery of the award.  Id.; N.Y. C.P.L.R. § 7511(a). New York courts have repeatedly held that "delivery" includes delivery to the union or agent representing an individual.  See, e.g., Case v. Monroe Cmty. College, 89 N.Y.2d 438, 443 (N.Y. 1997); Lowe v. Erie Ins. Co., 865 N.Y.S.2d 465, 468 (N.Y. App. Div. 2008).

The arbitration award was issued on May 28, 2013 and mailed to the parties—Elmhurst and the Union—on May 29, 2013.  Elmhurst's Reply at 2.[4]  Section 2103 of the CPLR provides that the statute of limitations begins to run five days after mailing where service is made by mail.  N.Y. C.P.L.R. § 2103(b)(2).  Accordingly, the statute of limitations began to run on June 3, 2013—five days after the award was delivered to the Union.[5]  Ninety days after June 3, 2013 is September 1, 2013.  Because September 1, 2013 was a Sunday, and September 2, 2013 was Labor Day—a public holiday—the limitations period expired on September 3, 2013—the day Plaintiffs filed the Petition. See Scuderi v. Bd. of Educ. For City Sch. Dist. Of Yonkers, 374 N.Y.S.2d 130, 133 (N.Y. App. Div. 1975); N.Y. Gen. Constr. Law § 25-a(1).  Accordingly, the Petition is timely.

   b. Merits

"[C]ourts play only a limited role when asked to review the decision of an arbitrator."  United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987).  They "are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the

---

[4] The award was also delivered to the parties by email on May 29, 2013.  Doren Decl., Ex. F.
[5] Plaintiffs' calculations are erroneous, but their mistake is ultimately irrelevant.  See Pls.' Elmhurst Opp'n at 5 ("June 4, 2013 is five days after . . . May 29, 2013.").

6

contract." Id. Indeed, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Id. at 38. Accordingly, the party seeking vacatur "bears the heavy burden of showing that the award falls within a very narrow set of circumstances," including "corruption, fraud, or some other impropriety on the part of the arbitrators." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003). A court may also vacate an award that exhibits "manifest disregard of law," that is, "that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." Id. at 389.

It is not immediately clear from the Petition on what grounds Plaintiffs seek to vacate the arbitration award. Plaintiffs cite a laundry list of alleged factual inaccuracies in the Arbitrator's Decision, but disagreement with an arbitrator's fact-finding is not an appropriate ground for vacating an arbitration award. Misco, 484 U.S. at 37–38 ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept . . . . [A]n arbitrator must find facts and a court may not reject those findings simply because it disagrees with them."). Plaintiffs also assert that the "arbitration process was nothing but a charade" because the Defendants colluded to mislead the arbitrator. Petition ¶ 8. This conclusory allegation is insufficient to state a claim that the award was procured through fraud. See Iqbal, 556 U.S. at 678.

In their Opposition, Plaintiffs assert for the first time that the Arbitrator's Decision exhibits a manifest disregard of law because it ignores the principle of

7

seniority.[6] Plaintiffs are incorrect. Seniority derives from contract—it is not a "legal principle." Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 131 (2d Cir. 2001). But even if it were, the Arbitrator's Decision does not exhibit a manifest disregard of law. The arbitrator did not disregard the seniority provisions of the CBA, but rather concluded that Elmhurst's employees were subject to two different collective bargaining agreements depending on their date of hire, and therefore constituted two different groups for seniority purposes. Arbitrator's Decision at 16–18. And the arbitrator came to his conclusion only after a detailed analysis of the parties' bargaining history and the language of their various collective bargaining agreements. Id. at 14–15.

"Only a barely colorable justification for the outcome reached" is required to enforce an arbitration award. D.H. Blair & Co. v. Gottdeiner, 462 F.3d 95, 110 (2d Cir. 2006) (quotation omitted). The arbitrator's reasoning far surpasses that threshold. And given the deference due to arbitration awards, the Court cannot conclude that the arbitrator improperly applied a clear and plainly applicable legal principle. See Duferco, 333 F.3d at 390. Accordingly, Plaintiffs' request for vacatur is denied.

III.    Plaintiffs' Hybrid 301/Fair Representation Claims

The Petition also asserts a so-called hybrid 301/fair representation claim—that Elmhurst breached the CBA and the Union breached its duty of fair representation. See DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S. 151, 164–65 (1983). Specifically, Plaintiffs allege that they were laid off by Elmhurst in violation of the seniority provisions of the CBA and that the Union failed to fairly represent them in the

---

[6] The Court need not address this argument, Galiano v. Fidelity Nat'l Title Ins. Co., No. 08-CV-4711 (TCP) (WDW), 2010 WL 9447505, at *3 (E.D.N.Y. Nov. 8, 2010) (stating that "[n]ew facts and allegations, first raised in a plaintiff's opposition papers, may not be considered" on a motion to dismiss); Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 851 (S.D.N.Y. 2000) ("parties are not entitled to assert new facts in submissions on a motion to dismiss"), but in any event it does not cure the Petition.

8

arbitration proceeding regarding those layoffs. "To prevail against either the company or the Union, employee-plaintiffs must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union." DelCostello, 462 U.S. at 165 (quotations omitted).

In order to establish a breach of a union's duty of fair representation, a plaintiff must establish two elements: (1) "that the union's actions or inactions are either arbitrary, discriminatory, or in bad faith"; and (2) that there is "a causal connection between the union's wrongful conduct and [plaintiff's] injuries." Vaughn v. Air Line Pilots Ass'n, Int'l, 604 F.3d 703, 709 (2d Cir. 2010) (quotations omitted). "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, as to be irrational." White v. White Rose Food, 237 F.3d 174, 179 (2d Cir. 2001) (quotation omitted). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 45–46 (1998). "[M]ere negligence, even in the enforcement of a collective-bargaining agreement" does not establish a breach of the duty of fair representation. United Steelworkers of Am. v. Rawson, 495 U.S. 362, 372 (1990). "A showing of bad faith requires a showing of fraudulent, deceitful, or dishonest action," White, 237 F.3d at 179, and that the union acted "with an improper intent, purpose, or motive," Spellacy v. Airline Pilots Ass'n-Int'l, 156 F.3d 120, 126 (2d Cir. 1998). "A union's acts are discriminatory when substantial evidence indicates that it engaged in discrimination that was intentional, severe, and unrelated to legitimate union objectives." Vaughn, 604 F.3d at 709 (quotations omitted).

Plaintiffs assert that the Union's actions were arbitrary or in bad faith because the Union "failed to fairly represent the interests of [Plaintiffs]." Petition ¶23. This is merely "a formulaic recitation of the elements of a cause of action" and does not suffice to state a claim. Iqbal, 556 U.S. at 678. Plaintiffs also assert that the Union failed to correct unspecified inaccuracies during the arbitration. Petition ¶ 29. But without more this vague allegation does not support a plausible inference of bad faith—rather, it only suggests that the Union was negligent or made a "tactical error," which is simply insufficient to state a claim for breach of the duty of fair representation. See, e.g., Barr v. United Parcel Serv., Inc., 868 F.2d 36, 43–44 (2d Cir. 1989).

Plaintiffs also assert that the Union acted in bad faith because it conspired with Elmhurst to undermine the arbitration process and "made secret side deals" with Elmhurst. Petition ¶¶ 25, 31. A conclusory allegation of the existence of a conspiracy, however, is a legal conclusion not entitled to the presumption of truth and is therefore insufficient to state a plausible claim. See Twombly, 550 U.S. at 556–57. Finally, Plaintiffs appear to allege that the Union's actions were discriminatory because all of the Plaintiffs are minorities. Petition ¶ 24. Plaintiffs, however, fail to allege any facts that would support a plausible inference of discriminatory intent on the part of the Union. See Reyes v. Fairfield Props., 661 F. Supp. 2d 249, 269 (E.D.N.Y. 2009) ("Even liberally construed, plaintiffs' complaint fails to allege any facts relating to race, other than a conclusory statement that defendants retaliated and discriminated against plaintiffs based on their being African–American, which is insufficient under Iqbal.").

Contrary to Plaintiffs' arguments, the Arbitrator's Decision demonstrates that the Union argued vigorously against the layoffs.[7] It reflects that the Union argued that the parties had never agreed to create two separate seniority groups, that Elmhurst had always treated all of its employees as part of one seniority group, and that seniority is a "key right" for which unions fight. See Arbitrator's Decision at 8–10. Indeed, the arbitrator noted that it was "unusual" that there were two separate seniority groups, but the plain language of the CBA compelled that conclusion. Id. at 18. Plaintiffs may disagree with this finding and the outcome of the arbitration, but that is simply not a sufficient ground for a claim against the Union. Barr, 868 F.2d at 43. Because the Petition fails to state a plausible claim that the Union breached its duty of fair representation, Plaintiffs' hybrid 301/fair representation claim must be dismissed.

IV.  Plaintiffs' Remaining Claims

To the extent that the Petition alleges claims against Elmhurst for other breaches of the CBA, or against the Union for instances prior to the arbitration in which it failed to fairly represent Plaintiffs, those claims all accrued well more than six months prior to the filing of the Petition and are therefore time-barred. See DelCostello v. Int'l Bhd. Of Teamsters, 462 U.S. 151, 169 (1983).

**CONCLUSION**

For the foregoing reasons, Defendants' motions to dismiss are hereby GRANTED.

SO ORDERED.

Dated:      Brooklyn, New York
            April 17, 2014

---

[7] In addition, the Court notes that the Union took action against Elmhust prior to taking the matter to arbitration. The Union called for a strike in protest of Plaintiffs' layoffs, which led to Elmhurst filing an action in this Court and obtaining an injunction to stop the strike. See Elmhurst Dairy, Inc. v. Milk Wagon Drivers & Dairy Emps., Local 584, Int'l Bhd. of Teamsters, No. 12-cv-5269 (ILG) (VVP) [Dkt. No. 17].

/s/
I. Leo Glasser
Senior United States District Judge